OPINION
{¶ 1} Plaintiff-appellant, Richard E. Bailey ("Bailey"), appeals from the judgment of the Trumbull County Court of Common Pleas, awarding exclusive possession and ownership of the property subject to this dispute to defendants-appellees, Randall ("Randy") and Allen ("Allen") Pochedly[1] (collectively "the Pochedlys"). We affirm the decision of the trial court.
 {¶ 2} The following relevant facts were mutually stipulated to by the parties. Bailey and Dolores Bailey ("Dolores") were married on August 29, 1960. During the course of the marriage, Bailey and Dolores owned a dairy farming operation located on approximately 98 acres in southern Ashtabula County and on approximately 61 acres in northern Trumbull County. The Trumbull County property, the subject property of this dispute, consisted of two separate parcels located in Gustavus Township. The first parcel ("parcel one"), purchased by Bailey and Dolores in 1974, contained approximately 58 acres of open farmland, with fencing and a variety of outbuildings. The second parcel ("parcel two"), purchased in 1983, contained approximately 2.066 acres with a farmhouse. Bailey and Dolores utilized the subject property for farming, the pasturing of dairy cows, and storage of grain and farm equipment.
 {¶ 3} On August 15, 1991, Bailey and Dolores were granted a divorce. Pursuant to the Final Decree of Divorce, the parties divided their land holdings. Dolores was awarded all right, title, and interest in the Trumbull County property. However, the agreement provided that Bailey would continue to lease parcel one for "general agricultural purposes" from Dolores or her successors in interest in return for Bailey's payment of real estate taxes on both parcel one and parcel two. The lease was to continue until such time as the property was offered for sale "by Plaintiff, her estate, beneficiaries, heirs or assigns."
 {¶ 4} The decree of divorce further provided Bailey with an option to purchase the parcel one at a price of $800 per acre for a period of ten years following the date of the decree. In addition, the decree also provided Bailey with a right of first refusal at any time Dolores or her successors in interest offered parcel one for sale at a price less than $800 per acre. In the event that Bailey did not exercise either his option or his right of first refusal on parcel one under either of the prescribed conditions, the agricultural lease was to "fully and permanently terminate."
 {¶ 5} The decree also provided Bailey with a right of first refusal on parcel two at any time and at any price if this parcel were offered for sale by Dolores or her successors in interest.
 {¶ 6} Dolores died in November 1991, and the Trumbull County property subsequently passed from her estate to her sons, Randy and Allen, on February 8, 1993, via a certificate of transfer.
 {¶ 7} In 1998, Bailey and the Pochedlys entered into informal discussions related to the purchase of parcel one and parcel two. In a letter to Randy dated March 31, 1998, Bailey, through his attorney, Robert Burkey ("Burkey") expressed a desire to negotiate the purchase of both parcels, but indicated that the parties were far apart in terms of price. The letter further indicated that Bailey was "otherwise * * * interested in going forward with the purchase of the land."
 {¶ 8} On December 9, 1998, upon learning that a purchase agreement for parcel two was imminent, Bailey had Burkey send a letter to the Pochedlys, formally exercising Bailey's option to purchase parcel one for $800 per acre and reminding the Pochedlys that Bailey had a right of first refusal on parcel two. The letter requested that the Pochedlys contact Burkey to "finalize the terms and conditions of the sale that need to be finalized" and to establish a closing date. The Pochedlys do not dispute that Bailey exercised his option to purchase parcel one in this letter.
 {¶ 9} On March 2, 1999, the Pochedlys' attorney, Michael Hiener ("Hiener") sent a letter responding to Burkey's two 1998 letters, and indicated that the two parcels of land are not clearly titled, since the legal description in the divorce decree was incomplete.[2] The letter indicated that, as a result of the error, both parcels of land were not transferred to Dolores as provided by the divorce decree. Hiener's letter requested Bailey's and Burkey's cooperation in "clearing the error in the title before we proceed."
 {¶ 10} On May 18, 1999, Hiener sent a letter to the Pochedlys, recounting a discussion with Burkey about the problems with the transfer of property pursuant to the decree of divorce and indicating that Burkey "seemed amenable to correcting the problem." The letter also reminded the Pochedlys of Bailey's "request to purchase the farm * * * and * * * in purchasing the house for his right of first refusal" (sic).
 {¶ 11} From June to December of 1999, the record reveals that the parties and their attorneys corresponded numerous times relating to a possible sale of parcel one for $800 per acre, and the possible sale of parcel two, including the house for $79,900, for a total purchase price of $126,300, and also corresponded both formally and informally regarding a request from the Pochedlys to see if Bailey would agree to help clear up the title problem by means of an agreed judgment entry amending the divorce decree.
 {¶ 12} On December 10, 1999, following months of failing to resolve the title issue by means of agreement, the Pochedlys filed a motion to correct the error in the divorce decree which caused the defective title transfer, pursuant to Civ.R. 60(A). On January 5, 2000, the court granted this motion. On February 2, 2000, an amended certificate of transfer, reflecting the trial court's amended judgment entry was issued.
 {¶ 13} On October 3, 2000, Attorney Mark VanRooy ("VanRooy"), who was retained by the Pochedlys to handle matters related to the Trumbull County Property, sent a letter to Bailey informing him that the Pochedlys had conditionally accepted an offer of $86,000 for the purchase of parcel two and requested that Bailey make his intentions known with respect to his right of first refusal by October 9, 2000. On November 9, 2000, Burkey responded, requesting clarification of the size and value of parcel two, related to a resurvey which was conducted pursuant to the conditional sales contract on that property. Evidence shows that this resurvey was performed in April of 1998. Burkey reiterated in this letter that Bailey had exercised the option in relation to parcel one, asked if the "cloud on the title" still existed, and asserted that an offer of $90,000 for the purchase of both parcels "remains on the table."
 {¶ 14} VanRooy responded by letter on December 28, 2000, forwarding a copy of the proposed purchase agreement on parcel two. VanRooy indicated that he was not aware that Bailey had exercised his option on parcel one and requested that Burkey contact him to "make the necessary arrangements to get this deal moving." Burkey responded via letter to VanRooy on January 5, 2001, requesting to see the survey to determine what part of the property is involved in the proposed transfer, and giving conditional approval for the sale of parcel two to the third party. Burkey expressed concern about the survey since access to the outbuildings was now in question and that Bailey intended to maintain his rights to access the property via the shared driveway. The letter also indicated that Bailey had arranged financing and that Burkey would "be notifying [VanRooy] shortly concerning obtaining the deed transferring this interest to Mr. Bailey."
 {¶ 15} On February 21, 2001, VanRooy sent a letter to Randy advising him that there had been no communication since January 5, 2001, regarding the exercise of the option to purchase parcel one. VanRooy advised Randy that he did not consider the option to be formally exercised until the funds were placed in escrow or otherwise made available. VanRooy indicated that he was "not going to press the issue with them" in light of the continued lack of communication between the parties.
 {¶ 16} On June 7, 2001, Cortland Savings Bank sent a letter to Burkey, indicating that the bank executed a mortgage deed for Bailey and requested a title search and a filing of the mortgage. The letter also indicated that the bank was preparing a check in the amount of $47,147.20 for the purchase of parcel two. On June 19, 2001, VanRooy faxed a letter requesting that Burkey prepare quit claim deeds for parcel one, and informing Burkey that Randy did not have the documentation relating to the survey, but giving Burkey the name of a person who might have that information. The letter additionally referenced payments that the Pochedlys had made for property taxes and the title fees, legal expenses and other charges related to the transaction and stated that the Pochedlys were "adamant in their position that they not be assessed any closing costs." In closing, the letter requested that Burkey inform VanRooy when the funds are placed in escrow and the title work completed.
 {¶ 17} On July 5, 2001, Burkey sent a letter to VanRooy with an estimate of costs for the transaction. The letter noted a slight discrepancy between deed and the 1998 survey, indicating that the placement of the stakes now appeared to give "more of the driveway" to parcel two than to parcel one, and that this may be an issue in terms of Bailey's access to parcel one. The letter also indicated that a deed was being submitted for the Pochedlys' signature. On July 25, 2001, Van Rooy sent a letter to Burkey indicating that he did not receive the deed referenced in the July 5 letter. On August 1, 2001, Burkey sent a letter to Van Rooy with the deed, but the description on that deed was not resolved. The letter additionally referenced an estimate for deed preparation and conveyance fees and proposed that the parties split these expenses. On September 10, 2001, VanRooy wrote a letter to Burkey inquiring if Burkey had received any additional information regarding the discrepancy in the legal description, and indicating that the Pochedlys could not sign the deed until this matter was resolved. The letter reiterated the Pochedlys' refusal to contribute toward closing costs and insistence that they be reimbursed for the expenses enumerated in the letter of June 19, 2001.
 {¶ 18} On February 21, 2002, Bailey filed his complaint against the Pochedlys, alleging that following the exercise of his option to purchase parcel one, the Pochedlys refused to execute a deed of conveyance after Bailey demanded it. Bailey sought specific performance on the contract, or, in the alternative, damages in the amount of $100,000.
 {¶ 19} On February 12, 2004, a bench trial was held. At close of trial, the court requested that the parties file a post-trial brief with arguments regarding the testimony heard, and proposed conclusions of law.
 {¶ 20} On March 24, 2004, the court issued its judgment entry. The court concluded that Bailey had validly exercised his option on parcel one, but his conduct of ignoring correspondence from the Pochedlys and failure to cooperate by taking actions in furtherance of closing, including Bailey's failure to tender a purchase price, give notice of escrow of the funds, or set a closing date over a period of three years, operated as a breach of the contract to purchase. The court granted the Pochedlys exclusive possession and ownership of the property.
 {¶ 21} Bailey timely appealed, raising three assignments of error:
 {¶ 22} "[1] The trial court erred to the prejudice of the appellant in finding and concluding that appellant had breached the contract for sale and purchase of the "property" created by appellant's exercise of the option set forth in the final divorce decree of August 15, 1991.
 {¶ 23} "[2] The trial court erred to the prejudice of appellant and abused its discreition (sic) by failing to award appellant specific performance and damages.
 {¶ 24} "[3] The trial court erred to the prejudice of appellant and abused its discretion by relying soley (sic) on Appellees' proposed findings of fact and conclusions of law."
 {¶ 25} An action for specific performance is "an equitable remedy resting in the sound discretion of the trial court." Bahner's Auto Partsv. Bahner (Jun. 23, 1998), 4th Dist. No. 97CA2538, 1998 Ohio App. LEXIS 3453, at *6 (citations omitted). Therefore, the standard of review to be applied is whether the trial court abused its discretion. Id; Metal CraftDocks Acquisition, Inc. v. Richlak, 11th Dist. Nos. 2001-G-2351 and 2001-G-2368, 2003-Ohio-191, at ¶ 17.
 {¶ 26} An abuse of discretion consists of more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990), 53 Ohio St.3d 161,169 (citation omitted). Reversal, under an abuse of discretion standard is not warranted merely because appellate judges disagree with the trial judge or believe the trial judge erred. Id. Reversal is appropriate only if the abuse of discretion renders "the result * * * palpably and grossly violative of fact and logic [so] that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." Statev. Jenkins (1984), 15 Ohio St.3d 164, 222 (citation omitted).
 {¶ 27} As the first and second assignments of error are related, they will be discussed together in the interests of judicial economy.
 {¶ 28} In his first assignment of error, Bailey maintains that the trial court erred as a matter of law by not excusing him from tendering full performance under the contract. Bailey argues that since the Pochedlys were unable to present marketable title to the property when Bailey expressed that he was "ready, willing, and able" to perform within the option period, and since the Pochedlys instructed him not to proceed until the title to the property was cleared, his non-performance should be excused. In his second assignment of error, Bailey argues that the trial court erred by failing to award him specific performance on the option contract for the purchase of parcel one, since Bailey established that he had both a valid enforceable contract, and showed that he was ready, willing and able to perform his obligations under the contract. These arguments are without merit.
 {¶ 29} "A party seeking specific performance of a contract must establish that he has a valid, enforceable contract, that he has performed or tendered performance, and that he is ready, willing and able to promptly perform all acts required of him in the specific execution of the contract." Bahner, 1998 Ohio App. LEXIS 3453, at *7, citing 84 Ohio Jurisprudence 3d (1988) 311-312, Specific Performance, Section 34.
 {¶ 30} The general rule is that an option for the purchase of real estate may be specifically enforced if: 1) notice of the exercise of the option is given; 2) the vendor refuses to comply; and, 3) the purchase price is tendered. Bahner, 1998 Ohio App. LEXIS 3453, at *7-*8.
 {¶ 31} Here, the parties stipulated that Bailey exercised his option to purchase parcel one, pursuant to the divorce decree, in his letter of December 9, 1998. However, a careful review of the record reveals that Bailey never tendered the purchase price to the Pochedlys, nor did Bailey deny this fact at trial. Relying on Wiedemann Brewing Co. v. Maxwell
(1908), 78 Ohio St. 54, Bailey argues that tender was excused, since it would have been wholly meaningless. Bailey's reliance on Wiedemann is inapposite.
 {¶ 32} While it is true that the Pochedlys stated via letter to Bailey's attorney that there was a problem with the title, there was no indication that the Pochedlys were unwilling to produce a deed. Over the course of the nine months prior to filing their 60(A) motion, the Pochedlys made several attempts, to no avail, to get Bailey to cooperate in resolving the title problem by filing an agreed judgment entry to the divorce proceeding. These facts are readily distinguishable from the facts in Wiedemann, where the plaintiff who held the option attempted to deliver payment and the seller showed absolutely no inclination to honor their end of the agreement. The evidence is uncontroverted that Bailey never attempted to tender payment, despite his insistence that he was "ready, willing, and able" to do so.
 {¶ 33} Bailey next argues that the Pocheldys could not grant title as described in the terms of the original option grant, because the survey on parcel two changed the acreage of parcel one slightly from what was contained in the original legal description. Evidence adduced at trial shows that the survey was conducted as a condition to the proposed sale of parcel two. The sale of parcel two was subject to Bailey's right of first refusal, which the evidence shows, was voluntarily waived. Thus, Bailey cannot now rely on a change in condition brought about by his own waiver of rights to excuse his failure to tender performance. "Failure to assert a right, when circumstances require its prompt attention may be evidence of the intent to relinquish the right." Bahner, 1998 Ohio App. LEXIS 3453, at *21. Such was the case here. Thus, the trial court did not abuse its discretion in finding that specific performance was not warranted, since Bailey failed to satisfy the third element of the test and there was competent and credible evidence adduced at trial which showed that there were no conditions warranting an excusal of Bailey's performance.
 {¶ 34} We further note that despite Bailey's assertions that he was ready willing and able to go forward with the transaction prior to August 15, 2001, there remained unresolved issues, including the extent to which each party bear the responsibility for closing and other transaction costs, as well as uncontroverted evidence on the record showing that Bailey stopped paying taxes on parcel one as required by the lease agreement, for which the Pochedlys were demanding reimbursement. In sum, not only has Bailey never tendered payment, but the parties failed to reach agreement on a number of other issues essential to the completion of the sale. Bailey's first assignment of error is without merit.
 {¶ 35} For the aforementioned reasons, the trial court did not abuse its discretion by not ordering specific performance on the contract or damages. Bailey's second assignment of error is likewise without merit.
 {¶ 36} In his third assignment of error, Bailey contends that the trial court erred by relying solely on the Pochedlys' findings of fact and conclusions of law, and that the court's "verbatim" adoption of these findings was against the manifest weight of the evidence.
 {¶ 37} Manifest weight of the evidence raises a factual issue. Buckv. Canacci (Nov. 21, 1997), 11th Dist. No. 96-L-185, 1997 Ohio App. LEXIS 5236, at *4. In reviewing a civil judgment under a manifest weight of the evidence standard, the trier of fact is in the best position to view the witnesses and their demeanor, and the reviewing court indulges every reasonable presumption in favor of the lower court's judgment and findings of fact. Shemo v. Mayfield Hts., 88 Ohio St.3d 7, 10,2000-Ohio-258. Thus, "[j]udgments supported by some competent, credible evidence * * * will not be reversed by a reviewing court as against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, at syllabus.
 {¶ 38} Bailey does not challenge the trial court's ability to adopt proposed findings of fact and conclusions of law verbatim from one of the parties. However, relying on Paxton v. McGranahan (Oct. 31, 1985), 8th Dist. No. 49645, 1985 Ohio App. LEXIS 9094, Bailey argues that the trial judge failed in his duty to read the proposed findings throroughly, and if he had, he would find several inaccuracies in the findings of fact that were submitted.
 {¶ 39} Bailey alleges that the findings of fact and conclusions of law adopted by the trial court were "legally and factually inaccurate" and against the manifest weight of the evidence. We have reviewed the record thoroughly and find that the alleged inaccuracies are irrelevant to the issue of whether Bailey's failure to tender payment was excused.
 {¶ 40} Bailey first alleges that the trial court's adoption of the finding that the option was exercised in the letter dated March 31, 1998 was inaccurate. He claims that the actual exercise date of the option was December 9, 1998. We agree that the letter of December 9, 1998, unequivocally states Bailey's intent to exercise the option; however, the letter of March 31, 1998, states, in relevant part, "[Bailey] is interested in going forward with the purchase of the land." This was apparently misconstrued by both defense counsel and the trial court as relating to the exercise of the option. Both parties stipulated at trial that Bailey exercised the option prior to the expiration of the ten-year period. Thus, the actual day the option was exercised is irrelevant, as long as the exercise took place before the expiration of the option period. Since both dates satisfied this requirement, the incorrect date as stated in the judgment entry is irrelevant to the disposition of the case.
 {¶ 41} Bailey next complains that the trial court erred in finding that he ignored a request by Hiener to cooperate in correcting divorce decree. We disagree. In our review of the record, there was competent and credible evidence adduced at trial that Bailey delayed responding to this request. Contrary to Bailey's assertion that the letter sent by his counsel "suggested a possible and simple resolution to correcting the description," the letter instead requested clarification as to the exact nature of the title issue. While Bailey is correct that Hiener stated in a later correspondence that "counsel seemed amenable to correcting the description," it was only after nine months of fruitless correspondence between the parties that the Pochedlys ultimately filed a motion to intervene and a Civ.R. 60(A) motion to amend the divorce decree.
 {¶ 42} Furthermore, the finding that from the time of the exercise of the option in December 1998, through November of 2000, Bailey ignored months of correspondence in furtherance of closing was supported by competent and credible evidence. Bailey maintains that the letter of March 2, 1999, instructed him not to proceed further until the title to the property had cleared. Contrary to this assertion, the letter asked
that "[Bailey] cooperate in clearing the error in title before we proceed."
 {¶ 43} Bailey further argues that the trial court's adoption of the finding that financing was not approved until June of 2001 was inaccurate, and that instead Bailey provided notice that "he had obtained financing" in January of 2001. This argument misstates the fact. The letter from Burkey, dated January 5, 2001, notifies VanRooy, who was the second attorney retained by the Pochedlys to handle this matter, that financing had been "arranged." Financing was not, in fact, approved until June, as evidenced by the letter from Cortland Bank, dated June 7, 2001. Moreover, the date financing was actually obtained was irrelevant, as it is undisputed that Bailey never tendered the purchase price to the Pochedlys.
 {¶ 44} Finally, Bailey makes arguments relating to the inaccuracy of the trial court's findings concerning taxes paid on the parcels. Since the payment of taxes was merely considered Bailey's rent for the use of the property, it is irrelevant to any issue related to Bailey's option to purchase.
 {¶ 45} Unlike the facts in Paxton, here, the relevant findings of the trial court were supported by competent and credible evidence and, therefore, were not against the manifest weight of the evidence. Bailey's third assignment of error is without merit.
 {¶ 46} We affirm the judgment of the Trumbull County Court of Common Pleas.
Rice, J., concurs, Ford, P.J., concurs in judgment only.
[1] Allen Pochedly died on May 29, 2003, during the pendency of this case. His interest is represented by his estate, with Amber Jayne Pochedly-Wintz, Allen's daughter, as executrix.
[2] The 61 total acres which was to be transferred to Dolores in the divorce decree was covered by two separate deeds. The first deed, corresponding to parcel one, described a total area of 61 acres, of which parcel two, the 2.066 acre portion, was listed separately but "contained within said bounds" of parcel one. The second deed covered parcel two. The final decree of divorce, which both parties agree should have included both deeded properties, only listed the legal description for parcel one, which described the 2.066 acres of parcel two as an exception
to the property transferred. As a result, after the divorce decree was finalized, the legal effect of the transfer was that Dolores had sole undivided interest in the 58 acres of parcel one, but only an undividedhalf-interest in parcel two, the other half-interest remaining in Bailey. This is Dolores' property interest which transferred to Randy and Allen from her estate as the result of the error on the divorce decree. This error was not discovered until some time prior to March of 1999, when the aforementioned letter was sent.