OPINION
{¶ 1} James M. Kleese appeals from the judgment of the Trumbull County Court of Common Pleas, adopting the magistrate's decision, and imposing a resulting trust in the amount of $25,000 in favor of Ila Jean Woodward. We affirm.
 {¶ 2} Mrs. Woodward was separated from her husband, Thomas R. Woodward. In 1999, the late Mr. Woodward became ill, and advised Mrs. Woodward and several of *Page 2 
their children that he had a large sum of money stored in a strongbox beneath his bed. He wished for his wife to receive this money on his death.
 {¶ 3} When the elder Mr. Woodward died in July 1999, two of the children, Thomas F. Woodward, and Janet Price, opened the strongbox, and found some $31,000 in it. The younger Mr. Woodward recalled the money being in various denominations, mostly small. Mrs. Price recalled the money being divided into thirty-one stacks of $100 bills. After counting the money, Mr. Woodward took the strongbox, and stored it in his basement, at his mother's behest. Mrs. Woodward wished to keep the money as a rainy day fund, and was concerned she would spend it, if she had access.
 {¶ 4} After a year, Thomas Woodward transferred the money to his sister, the late Jane Kleese. Jane Kleese was married to appellant. Evidently, Mrs. Woodward had decided the money would be safest in a bank account. Mrs. Kleese was particularly close to her mother, often lunching and shopping with her. They shared a checking account. Mr. Woodward gave the money to his sister, Mrs. Kleese, in a brown paper bag. There was about $22,800 at that time, since Mrs. Woodward had purchased a piano, and, possibly, other items from the fund.
 {¶ 5} Mrs. Woodward testified that in late July 2000, she drove with her daughter, Mrs. Kleese, and the latter's husband, Mr. Kleese, to Sky Bank in Howland to deposit the $22,800. Mrs. Woodward testified that the account was to be in the names of the Kleeses, as she trusted them absolutely, and wished them to hold the money for her, until such time as she required it desperately. She testified that the money was to be returned to her on request. She admitted she never saw the money the day it was *Page 3 
allegedly deposited, and that she rarely, if ever, asked to look at any bank statement regarding the account. She did not enter the bank when the Kleeses went in to open the account.
 {¶ 6} Mr. Kleese testified that the account in question, No. 4100815913, was opened by himself and his wife for such purposes as saving money for vacations, and realty taxes. He testified he did not go with his wife and mother-in-law to open the account; and that he was unaware that his wife may have deposited such monies into the account. Mr. Kleese testified to his belief the account was opened with the Kleeses' own money; and he introduced evidence tending to show that less than $15,000 of the monies in the account could have come from sources other than the Kleeses.
 {¶ 7} At some point, Mrs. Kleese prevailed on her mother to give $500 dollars each to four of Mrs. Woodward's grandchildren from the account. There is evidence indicating Mrs. Kleese herself may have made substantial withdrawals and deposits to the account at various times. Neither Mrs. Woodward nor Mr. Kleese could explain these transactions. In November 2001, Mrs. Kleese wrote her mother a note stating she owed her some $1,740.52 for money she had borrowed.
 {¶ 8} Mrs. Kleese died suddenly on January 23, 2002. Shortly thereafter, Mrs. Woodward requested Mr. Kleese return to her the original $22,800, and the $1,740.52 taken by her late daughter. She testified that he promised to give her $25,000, to cover the original funds, the additional $1,740.52 loaned to her late daughter in November 2001, with an additional $459.48 as a sort of interest payment. Mr. Kleese evidently told Mrs. Woodward that there was only a little more than $900 in the subject account, *Page 4 
at that time, but that he would make up the difference out of his late wife's life insurance proceeds.
 {¶ 9} The younger Mr. Woodward testified he spoke with Mr. Kleese about the money allegedly owed his mother in late March 2002, and that Mr. Kleese also promised him that Mrs. Woodward would receive $25,000 from his late wife's life insurance proceeds.
 {¶ 10} August 3, 2002, Cheryl Boor, another of Mrs. Woodward's daughters, spotted Mr. Kleese's truck at the Robbins Avenue Lounge in Niles. As her mother had not yet received any money from Mr. Kleese, she decided to stop and speak with him on the matter. Mrs. Boor and Mr. Kleese went to the parking lot of the lounge, where Mr. Kleese wrote and signed a note, stating: "I agree to pay Jean Woodward $25,000 when Jane's probate is settled."[1] Mrs. Boor testified the encounter with her brother-in-law was cool, but that he willingly agreed he owed the money and would write the note. Mr. Kleese testified that Mrs. Boor was extremely upset with him, yelling, and that he wrote the note to quiet her.
 {¶ 11} On or about December 4, 2002, Mrs. Woodward filed a claim against her daughter's estate, by which she sought payment of $25,000 given as a loan to her daughter — not her daughter and Mr. Kleese. She withdrew the claim October 9, 2003, the day her daughter's estate was declared insolvent.
 {¶ 12} That same day, Mrs. Woodward filed the instant action, which stated she had loaned some $25,000 to both her late daughterand Mr. Kleese. November 18, 2003, Mr. Kleese filed a motion to dismiss pursuant to Civ.R. 12(B)(6). February 4, *Page 5 
2004, Mrs. Woodward filed an affidavit stating she had loaned $22,800 to both her late daughter and Mr. Kleese. The younger Mr. Woodward also filed an affidavit February 4, 2004, stating that the loan was made to his late sister, but was for the benefit of both his sister and her husband. Mr. Kleese filed his answer to the complaint on or about February 18, 2004; and the trial court denied his previously-filed motion to dismiss by a judgment entry filed February 24, 2004.
 {¶ 13} The matter was assigned to the magistrate, who held a bench trial September 20, 2005, and October 13, 2005. The magistrate filed his decision February 6, 2006. In that decision, he concluded the $22,800 given by Mrs. Woodward to her late daughter, Mrs. Kleese, may never have entirely entered the account at the Howland Sky Bank. Nevertheless, he found the money was to have been held in trust for Mrs. Woodward by both Mr. and Mrs. Kleese; and that a resulting trust in the amount of $25,000 arose in favor of Mrs. Woodward, and against her son-in-law.
 {¶ 14} Mr. Kleese objected to the trial court. By a judgment entry filed December 7, 2006, the trial court adopted the magistrate's decision. Mr. Kleese timely appealed, assigning four errors:
 {¶ 15} "[1.] The trial court erred in amending plaintiffs complaint without express or implicit consent from the parties.
 {¶ 16} "[2.] The trial court erred in that the judgment was against the manifest weight of evidence in finding that appellant was given money by appellee in trust.
 {¶ 17} "[3.] The trial court erred in failing to admit [appellant's] exhibits into evidence after an oral motion was granted admitting such exhibits. *Page 6 
 {¶ 18} "[4.] The trial court erred in failing to dispose of all claims contained in appellee's original complaint."
 {¶ 19} In reviewing a trial court's decision to adopt or reject a magistrate's decision, an appellate court looks for abuse of discretion.Hayes v. Hayes, 11th Dist. No. 2005-L-138, 2006-Ohio-6538, at ¶ 10. An abuse of discretion is no mere error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Rather, the phrase connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. Id. Therefore, "abuse of discretion" describes a judgment neither comporting with the record, nor reason. See, e.g., State v.Ferranto (1925), 112 Ohio St. 667, 676-678. Consequently, when a judgment "is supported by a substantial amount of competent and credible evidence," it may not be reversed. Hayes at ¶ 10.
 {¶ 20} By his first assignment of error, Mr. Kleese objects to the magistrate's decision to order amendment of the complaint, reflecting that appellee's claim sounded not in contract, but in equity. The original complaint alleged a loan from Mrs. Woodward to the Kleeses; the magistrate concluded that the issue tried concerned whether Mr. Kleese had an obligation to repay Mrs. Woodward based on his acts and statements, under the equitable theory of resulting trust. Mr. Kleese contends that he was not prepared to proceed under this theory; that he believed, throughout the course of trial, that the issue being tried was the existence of a loan, arising in contract, between himself and Mrs. Woodward; and that he was prejudiced on the merits in the defense of the claim by the amendment.
 {¶ 21} Civ.R. 15(B), governing amendments of pleadings to conform to the evidence, provides, in pertinent part: *Page 7 
 {¶ 22} "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues."
 {¶ 23} There was no formal agreement to try this case under a theory of resulting trust. Consequently, we must determine whether the parties impliedly consented to do so.
 {¶ 24} "To determine whether the parties impliedly consented to litigate an unpleaded issue, the court must consider numerous factors: (1) `whether they recognized that an unpleaded issue entered the case' (2) `whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be retried on a different theory' and (3) `whether the witnesses were subjected to extensive cross-examination on the issue.' State ex rel.Evans [v. Bainbridge (1983)], 5 Ohio St.3d [41] at 45-46. Further, a party's failure to object when evidence relating directly to the unpleaded issue is introduced does not establish implied consent. Id. at 46. Instead, it must appear that the parties understood the evidence was aimed at the unpleaded issue. Id." Sheperak v. Ludlow, 6th Dist. No. F-03-011, 2004-Ohio-3155, at ¶ 16.
 {¶ 25} An appellate court will not disturb the trial court's decision regarding a Civ.R. 15(B) amendment absent an abuse of discretion.Bainbridge at paragraph three of the syllabus. *Page 8 
 {¶ 26} In this case, while Mrs. Woodward's complaint characterized the monies at issue as a "loan" to Mr. Kleese and his wife, it was evident from the commencement of trial that the action would be tried on another basis. Early in the proceedings, the magistrate stated, "[t]his is an action by the Plaintiff, Mrs. Woodward, for monies either loaned orotherwise in the possession of, allegedly of the Defendant and theDefendant's late wife * * * [.]" (Emphasis added.) All of the witnesses and evidence put on by Mrs. Woodward tended to show that her action was not contractual — i.e., about a loan to the Kleeses — but about an informal trust arrangement. Consequently, the parties were on notice that an unpleaded issue had entered the case. Sheperak at ¶ 16. Mr. Kleese points to no evidence or witnesses he would have introduced otherwise, as a result of this unpleaded issue entering the case; and his counsel took full advantage of his opportunities to cross-examine Mrs. Woodward's witnesses. Id. Further, Mr. Kleese fully raised this issue before the trial court both in his objections to the magistrate's decision, and in a supplemental memorandum in support of those objections. The trial court rejected this argument. We find no abuse of discretion in the trial court's conclusion the parties impliedly consented to trying the case on the basis of a species of trust arrangement. Cf. Id.[2]
 {¶ 27} The first assignment of error lacks merit.
 {¶ 28} By his second assignment of error, Mr. Kleese asserts the trial court's judgment is against the manifest weight of the evidence.
 {¶ 29} "Manifest weight of the evidence raises a factual issue.Buck v. Canacci *Page 9 
(Nov. 21, 1997), 11th Dist. No. 96-L-185, 1997 Ohio App. LEXIS 5236, at 4. In reviewing a civil judgment under a manifest weight of the evidence standard, the trier of fact is in the best position to view the witnesses and their demeanor, and the reviewing court indulges every reasonable presumption in favor of the lower court's judgment and findings of fact. Shemo v. Mayfield hits. [(2000)], 88 Ohio St.3d 7, 10
* * *. Thus, `judgments supported by some competent, credible evidence (* * *) will not be reversed by a reviewing court as against the manifest weight of the evidence.' CE. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, * * *, at syllabus." Bailey v. Pochedly, 11th Dist. No. 2004-T-0037, 2005-Ohio-3087, at ¶ 37. (Parallel citations omitted.)
 {¶ 30} Mr. Kleese argues there are too many discrepancies in the evidence relied on by the trial court. He notes that, both in her claim against his late wife's estate, and in her complaint below, Mrs. Woodward characterized the transaction at issue as a loan. He notes that, in his affidavit submitted to the court February 4, 2004, Mrs. Woodward's son also described the transaction as a loan. He observes that the younger Mr. Woodward, and his sister, Mrs. Price, who both claimed to have counted the money following their father's death, could not agree on the denominations found in the strongbox. He emphasizes that the records concerning deposits and withdrawals into the account wherein he and his late wife allegedly placed the money show that less than $15,000 came from sources other than him.
 {¶ 31} We respectfully find these arguments unavailing.
 {¶ 32} "A resulting trust is an equitable trust, which seeks to enforce the intention of the parties. Bilovocki v. Marimberga (1979), 62 Ohio App.2d 169, 172 * * *. In Bilovocki, the court noted that: *Page 10 
 {¶ 33} "`A resulting trust has been defined as "one which the court of equity declares to exist where the legal estate in property is transferred or acquired by one under facts and circumstances which indicate that the beneficial interest is not intended to be enjoyed by the holder of the legal title."' Id. citing The First National Bank ofCincinnati v. Tenney (1956), 165 Ohio St. 513, 515-516 * * *." Alteno v.Alteno (Jan. 25, 2002), 11th Dist. No. 2000-T-0078, 2002 Ohio App. LEXIS 226, at 8-9. (Parallel citations omitted.)
 {¶ 34} While acknowledging the discrepancies noted by Mr. Kleese, it is clear from the record that the learned magistrate had competent, credible evidence before him supporting imposition of a resulting trust in favor of Mrs. Woodward. There was the testimony of the younger Mr. Woodward, and his sister, Mrs. Price, that they had counted the money in their father's apartment at the time of his death. There was the younger Mr. Woodward's testimony he turned over the money, after a period of a year, to the late Mrs. Kleese. There was Mrs. Woodward's testimony that she intended the Kleeses to hold the money for her, against a rainy day, and that she drove with them to Sky Bank in Howland for its deposit. There was evidence that Mrs. Kleese borrowed another $1,740.52 from her mother, and promised to repay it. There was evidence-including his own note given to Mrs. Boor — that Mr. Kleese acknowledged a duty to repay $25,000 to Mrs. Woodward. It was the magistrate's duty, not ours, to evaluate the credibility of the witnesses and evidence presented to him; and we must construe the record with due deference to his judgment.Bailey, supra, at ¶ 37.
 {¶ 35} The second assignment of error lacks merit. *Page 11 
 {¶ 36} By his third assignment of error, Mr. Kleese attacks the failure of the magistrate to include in his decision acknowledgment that Mr. Kleese's exhibits were admitted into evidence. Mr. Kleese's counsel moved for their admission at trial, and the magistrate granted the oral motion.
 {¶ 37} "Decisions regarding the admissibility of evidence are within the broad discretion of the trial court. * * * A decision to admit or exclude evidence will be upheld absent an abuse of discretion. * * * Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice. * * *" Beard v. Meridia HuronHosp., 106 Ohio St.3d 237, 2005-Ohio-4787, at ¶ 20. (Internal citations omitted.)
 {¶ 38} In this case, while the magistrate failed to acknowledge the admission of Mr. Kleese's exhibits in his decision, several of those exhibits are in the record; and the magistrate's decision evidences they were considered, since the magistrate noted the money entrusted by Mrs. Woodward to the Kleeses may never have entered the subject Sky Bank account — a matter largely to be gleaned from bank records submitted by Mr. Kleese. Consequently, we find no prejudice to Mr. Kleese's substantial rights, and deem any error harmless. Beard at ¶ 20; Civ.R. 61.
 {¶ 39} The third assignment of error is without merit.
 {¶ 40} By his fourth assignment of error, Mr. Kleese argues the judgment of the trial court is not a final appealable order, since it did not dispose of the contract claim set forth in Mrs. Woodward's complaint. He further argues the trial court erred by failing to include the determination and language necessary under Civ.R. 54(B) for making a judgment disposing of less than all of the claims in an action final. *Page 12 
 {¶ 41} "A final order is one that, inter alia, affects a substantial right and determines the action. See R.C. 2505.02(B)(1)." McCall v.Sexton, 4th Dist. No. 06CA12, 2007-Ohio-3982, at ¶ 7. "The standard for assessing whether a judgment `determines' the action is whether the judgment disposes of all issues and leaves nothing for further adjudication." Id. at ¶ 9.
 {¶ 42} We respectfully believe the judgment of the trial court is final, appealable, and properly before this court. The issue before the trial court was whether Mr. Kleese was under a duty to pay Mrs. Woodward $25,000. Though pleaded as a loan, arising in contract, the trial court treated the matter as one in equity — correctly, we believe. But, however denominated, the judgment of the trial court disposed of all the issues in the case, by determining that Mr. Kleese was obligated, under a theory of resulting trust, not contract, to pay Mrs. Woodward $25,000. That is, the contract claim was converted to one of resulting trust. Consequently, no Civ.R. 54(B) language was required to make the judgment final and appealable.
 {¶ 43} The fourth assignment of error lacks merit.
 {¶ 44} The judgment of the Trumbull County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, P.J., DIANE V. GRENDELL, J.,
concur.
[1] Mr. Kleese was his late wife's executor.
[2] We note that no formal amendment of the complaint is in the record. However, this is not fatal to the judgment rendered. Cf. Civ.R. 15(B); Mendiola v. Mendiola, 11th Dist. No. 2006-P-0038, 2007-Ohio-466, at ¶ 39. *Page 1